UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **MELANIE D. WHITE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:21-CV-00103-SLC |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** *sued as Kilolo Kijakazi*,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Melanie D. White appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income (SSI). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I.  FACTUAL AND PROCEDURAL HISTORY

White applied for SSI in October 2019, alleging disability as of September 12, 2018.[2] (ECF 17 Administrative Record ("AR") 15, 240-57). White's claim was denied initially and upon reconsideration. (AR 15, 161-74). On August 28, 2020, administrative law judge ("ALJ") Kathleen Winters conducted an administrative hearing at which White, who was represented by counsel, and a vocational expert ("VE") testified. (AR 35-76). On September 28, 2020, the ALJ rendered an unfavorable decision to White, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

[2]  Regardless of a claimant's alleged onset date, SSI is not payable until the month following the month in which a claimant files her SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month White could be eligible to receive SSI is November 2019, given that she applied for SSI in October 2019.

caused by her impairments. (AR 15-28). The Appeals Council denied White's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

White filed a civil action with this Court on March 11, 2021, seeking relief from the Commissioner's final decision. (ECF 1). In her opening brief, White contends that the ALJ's step-five finding is not supported by substantial evidence because the ALJ failed to identify a significant number of jobs that she could perform despite her impairments. (ECF 23 at 10). The Commissioner timely file a response brief in opposition to White's arguments. (ECF 24). White, however, failed to file a reply brief, and her time to do so has now passed. (ECF 22).

At the time of the ALJ's decision, White was thirty-six years old (AR 235) and had a seventh grade education (AR 49, 276), with no past relevant work experience (AR 26, 276). In her application, she alleged disability due to depression, chronic migraines, nerve problems in her lower back and legs, degenerative disc disease and bulging discs, two right ankle surgeries, a "crooked" right leg and walking "sideways," a tumor on her brain stem, hypothyroidism, bilateral carpal tunnel syndrome, recurring skin infection of the right ankle, and a hernia. (AR 275).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

(citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking SSI must establish that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether her impairment is one that the Commissioner considers conclusively

disabling; (4) whether the claimant is incapable of performing her past relevant work; and (5) whether the claimant is incapable of performing any work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On September 28, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-28). At step one, the ALJ concluded that White had not engaged in substantial gainful activity after her application date of October 5, 2019. (AR 17). At step two, the ALJ found that White had the following severe impairments: degenerative joint disease and status-post right ankle fusion, right posterior foot arthrodesis, degenerative disc disease of the lumbar spine, migraine, and obesity. (*Id.*). At step three, the ALJ concluded that White did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 20).

The ALJ assigned White an RFC for "light work as defined in 20 CFR 416.967(b), except she could frequently handle or finger. She can occasionally climb stairs or ramps,

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

balance, stoop, or crouch.  She can never climb ladders, ropes, or scaffolds, kneel or crawl.  She must avoid walking on uneven or slippery surfaces."  (AR 21).  White had no past relevant work experience relevant to step four.  (AR 26).  At step five, the ALJ found that given White's age, education, work experience, and RFC, White could perform a significant number of light-exertional jobs in the national economy, including folder, inspector and hand packager, and mail clerk.  (AR 27).  Therefore, White's SSI application was denied.  (AR 28).

### C.  The ALJ's Step-Five Determination

In her sole argument on appeal, White challenges the ALJ's step-five determination.  (ECF 23 at 10-14).  As already explained, a plaintiff seeking SSI bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  At this final step, the Commissioner must establish that the plaintiff's RFC allows her to engage in work found in "significant numbers" in the national economy.  *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009); *see* 20 C.F.R. § 416.966.

White argues that the ALJ failed to carry the Commissioner's burden to identify a significant number of jobs in the national economy that she is capable of performing despite the limitations caused by her impairments.  (ECF 23 at 10-14).  The ALJ concluded at step five that White was not disabled based on the VE's testimony that a hypothetical individual of White's age, education, work experience, and RFC could still perform a significant number of light-exertional jobs in the national economy.  (AR 27).  Specifically, the VE testified that such individual could perform the following representative jobs:  folder, 60,000 jobs in the national economy; inspector and hand packager, 45,000 jobs in the national economy; and mail clerk, 13,000 jobs in the national economy.  (AR 69).  White contends that the ALJ failed to carry her

step-five burden because the total number of representative jobs cited by the VE—118,000 jobs nationally—accounts for just .080% of the 147,276,000 total jobs in the national economy. (ECF 23 at 11-14 (citing *Sally S. v. Berryhill*, No. 2:18cv460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019))).

"The Seventh Circuit [Court of Appeals] has not affirmatively established the threshold for the number of jobs in the national economy that qualifies as significant." *John C. v. Saul*, No. 4:19-cv-04111-SLD-JEH, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021). In *Weatherbee v. Astrue*, the Seventh Circuit found that 140,000 representative jobs in the national economy was "well above the threshold for significance," yet did not definitively identify an actual threshold. 649 F.3d 565, 572 (7th Cir. 2011); *see also Angela L. v. Saul*, No. 1:20-cv-00481-SEB-DML, 2021 WL 2843207, at *5 (S.D. Ind. July 7, 2021); *John C.*, 2021 WL 794780, at *5. In *Primm v. Saul*, the Seventh Circuit found that 110,000 jobs in the national economy was a significant number. 789 F. App'x 539, 546 (7th Cir. 2019). Also, in *Collins v. Berryhill*, the Seventh Circuit found that just 55,000 jobs was a significant number of jobs nationally. 743 F. App'x 21, 25-26 (7th Cir. 2018). And more recently, the Seventh Circuit commented in *Mitchell v. Kijakazi* that 30,000 jobs was a significant number nationally. No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. 2021).

But the *Primm* court relied on *Liskowitz*, a case involving regional, rather than national, numbers. *Primm*, 789 F. App'x at 546; *see Liskowitz*, 559 F.3d at 743 (finding that 4,000 jobs in the Milwaukee area was a significant number, and commenting that "it appears to be well-established that 1,000 jobs is a significant number" (collecting cases)). The *Collins* court, indirectly, did as well. 743 F. App'x at 25-26 (relying on *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016), which in turn relied on *Liskowitz*). The same occurred in *Mitchell*. 2021 WL

3086194, at *3 (citing *Weatherbee*, 649 F.3d at 572, which in turn relied on *Liskowitz*, 559 F.3d at 743).  Some district judges have concluded that "reliance on *Liskowitz*'s regional threshold is . . . suspect (and, by extension, so is the reliance on *Primm*)" when considering a claimant's argument challenging the number of national jobs identified.  *James A. v. Saul*, 471 F. Supp. 3d 856, 859-60 (N.D. Ind. July 10, 2020).  Therefore, while *Primm, Collins,* and *Mitchell* provide some guidance, they are not without vulnerability.  *See Engel v. Kijakazi*, No. 20-CV-1206-SCD, 2021 WL 4843871, at *11 (E.D. Wis. Oct. 18, 2021) (collecting cases) ("Engel and other courts have accused the Seventh Circuit of misapplying *Liskowitz* in cases (like *Mitchell*, *Weatherbee*, and *Primm*) involving national numbers.  That's possible . . . .  More likely, though, it appears from the Seventh Circuit's interpretation of its own prior holding in *Liskowitz* that 1,000 jobs nationally can be a significant number of jobs.").

"[D]istrict courts within the circuit—applying national numbers—have found as many as 120,350 jobs to not meet the burden, and as few as 17,700 jobs to be significant."  *Angela L.*, 2021 WL 2843207, at *5 (citing *John C.*, 2021 WL 794780, at *5); *compare Sally S.*, 2019 WL 3335033, at *11 (120,350 jobs nationally is not a significant number), *with Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs nationally is a significant number).  Thus, this circuit lacks definitive guidance on what constitutes a "significant number" of jobs in the national economy.  *See Sundsmo v. Saul*, No. 20-cv-100-wmc, 2020 WL 6817112, at *7 (W.D. Wis. Nov. 20, 2020) (concluding 67,327 jobs nationally was a significant number, observing that "this court has no ready guidance, other than to note that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant capable of full-time work appears consistent with decades of case law and the applicable regulations . . . ."); *see also Ellis v Kijakazi*, No. 20-CV-719, 2021 WL

3514701, at *5 (E.D. Wis. Aug. 9, 2021) (observing the "lack of clarity from the Seventh Circuit regarding . . . 'significant numbers'" when concluding that 14,500 nationally was not a significant number).

The undersigned Magistrate Judge faced a similar argument last year in *Knapp v. Saul*, No. 1:20-cv-00011-PPS-SLC, 2021 WL 536121, at *4-5 (N.D. Ind. Jan. 27, 2021), *R. & R. adopted by* 2021 WL 536483 (N.D. Ind. Feb. 12, 2021). There, I rejected the claimant's argument that 120,000 jobs nationally was not a significant number. *Id.* The number of jobs challenged here, 118,000, is akin to the number of jobs at issue in *Knapp*, and neither party has presented me with a persuasive reason to depart from my conclusion in *Knapp*.

In fact, I commented in *Knapp* that "even when considering just the three jobs identified by the VE, the ALJ provided a sufficient number of jobs through his identification of 29,000 polishing machine operator jobs, 22,000 sorting machine operator jobs, and 16,500 wire insulator jobs." *Id.* at *4. Thus, at least on the facts presented in *Knapp* and under the law at the time, I viewed that even 67,500 jobs in the national economy would still be a significant number of jobs. *Id.* More recently, I have found as few as 37,700 jobs nationally to be a significant number of jobs. *See Levitz v. Comm'r of Soc. Sec.*, No. 1:20-cv-00407-SLC, 2022 WL 110239, at *4-5 (N.D. Ind. Jan. 12, 2022); *see also Zych v. Comm'r of Soc. Sec.*, No. 1:20-cv-00414-SLC, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 15, 2021) (finding 41,000 jobs nationally was a significant number of jobs)*, appeal docketed*, No. 22-1058 (7th Cir. Jan. 13, 2022). And to the extent that White relies on the *Sally S.* decision finding that 120,350 jobs was not a significant number nationally, 2019 WL 3335033 at *11, that same district judge more recently concluded that just 50,566 jobs was a significant number of jobs nationally. *See Rhonda F. v. Kijakazi*, No. 3:21cv254, 2022 WL 292738, at *7 (N.D. Ind. Feb. 1, 2022); *see also John B. v. Kilolo Kijakazi*,

No. 3:21-cv-485, 2022 WL 669900, at *6 (N.D. Ind. Mar. 7, 2022) (finding 59,000 jobs a significant number nationally).

Given the foregoing persuasive authority, and the lack of definitive guidance in this circuit as to what constitutes a significant number of jobs, I conclude that 118,000 jobs in the national economy is a "significant number" of jobs for purposes of the ALJ's step-five determination in this case.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against White.

SO ORDERED.

Entered this 9th day of March 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge